## Campbell's Estate.

*Will—Construction—Legacies—Charge on land—Act of April 27, 1855, P. L. 368.*

1. Where a testatrix having an undivided interest in the real estate of an intestate, by her own will gives three pecuniary legacies and directs "said bequest to come out of the Wallace Estate," meaning her interest in the intestate's estate, and further gives to her husband "the balance coming out of the aforesaid Wallace Estate," the will works a conversion of the interest in the Wallace estate, and the Act of April 27, 1855, P. L. 368, does not bar the claims of the legatees where such claims are not paid within twenty-one years from the death of testatrix.

2. In such a case the legatees are competent witnesses to rebut the presumption of the payment of the legacies.

Argued April 30, 1913. Appeal, No. 167, April T., 1913, by Benjamin H. Thompson, Ancillary Adminis-

·trator c. t. a. of the Estate of Stephen M. S. Campbell, deceased, from decree of O. C. Allegheny Co., May T., 1912, No. 123, sustaining exceptions to adjudication in Estate of Sarah A. Campbell, deceased. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that James Wallace died on July 7, 1881, intestate, leaving as his only heirs a number of nephews and nieces. His estate consisted of real and personal property. One of the nieces, Sarah A. Campbell, a resident of Kansas, died on July 26, 1885, leaving a will by which she disposed of her estate as follows:

"First. I give, devise and bequeath to my sisters, Mary Jane Wilson, Six Hundred Dollars, Elizabeth Adams, Two Hundred Dollars, Ellen Moorhead, Two Hundred Dollars, to my brothers as follows: William N. Wilson, Two Hundred Dollars, D. W. Wilson, Two Hundred Dollars. Said bequests to come out of the James Wallace Estate.

"Second. I give, devise and bequeath to my husband, S. M. S. Campbell, his heirs and assigns forever, the following real estate, lying in Sedgwick County, State of Kansas, viz: The South Half of the Southwest quarter of Section Four and the North half of the Northwest quarter of Section Five in Township Twenty-eight South Range One West. Also the balance coming out of the aforesaid Wallace Estate, this property is to consist of real, personal, mixed of whatever nature and kind soever."

The real estate of the Wallace estate was not sold until after her death.

At the audit the deposition of David W. Wilson, one of the legatees, was offered in evidence.

Mr. Graham: I object to the competency of David W. Wilson, he claiming this legacy out of land the fee of

which was vested in Stephen M. S. Campbell and the said Stephen M. S. Campbell being now deceased, the said David W. Wilson is claiming adversely to the estate of the said Stephen M. S. Campbell.

I object to the answers to the interrogatories from four to eight, both inclusive, as incompetent, irrelevant and immaterial, and I call your honor's attention to the last two as being hearsay, and I object to them.

The deposition is further objected to for the reason that they show on the face that they are not in the handwriting of the deponent, and there is no certificate that they were written by the commissioner.

Objection overruled. [1]

The auditing judge, OVER, J., awarded the fund to the ancillary administrator of the estate of Stephen M. S. Campbell.

On exceptions to the adjudication HAWKINS, P. J., filed the following opinion:

If there had been by express words or necessary implication, a specific devise to testatrix' husband of her share in the Wallace estate, the intent would of course have been clear. The whole title would have vested in him charged with liability for these legacies, and the devisee would himself have become personally liable as well by acceptance. But the will presents a different aspect. The gift is not of the Wallace property in specie, but of its proceeds. One sister was to receive $600, "out of" the estate, another sister $200, the brothers $200 each, and the husband "the balance." Balance of what? Obviously of the fund "out of" which sisters and brothers were to be paid: Mustin's Est., 194 Pa. 437. The same idea runs through the whole disposition. The husband must look to the same source as testatrix' brothers and sisters. The same operative words are used in respect to each and all. Each was to be paid "out of" the Wallace estate. That is the designated source of payment. The sisters and broth-

ers were to be paid in cash and so must he. And the
reason which underlies this scheme is obvious. Be-
cause testatrix had but an undivided interest in the
land, distribution would follow the ordinary course of
proceedings in partition. As the shares of the benefi-
ciaries were made payable in cash, conversion must
from necessity have been in contemplation in order
to provide the means of satisfaction: Keim's Est.,
201 Pa. 609. In Laughlin's Est., 131 Pa. 333, where
an undivided interest in real estate was set apart as a
fund "out of which" certain pecuniary legacies were
directed to be paid, and the surplus, if any, paid to
another, conversion was held necessary to carry out
the testamentary scheme. The manifest intent, said
the court, was to give certain specified legatees an in-
terest, as distinguished from a lien, in his individual
property. He expressly "set apart or designated" that
property as a "fund or estate out of which" their "pay-
ment in full" should be made. So here this testatrix
sets apart her interest in the Wallace estate, blending
realty and personalty as a fund from which payment
should be made. The legacies to the brothers and sis-
ters and to the husband were by the express terms of
the will to "come out" of the fund, and conversion of
the land was necessary to carry out the testamentary
intent. The wording of the two wills differs, but the
meaning is unmistakably the same.

In this view the question of the bar of the act of
1855 is not involved. The contingency of conversion
in course of proceedings in partition which testatrix
had in contemplation has happened; and the proceeds
are now here for distribution. The delay in making
partition is immaterial to the question involved here.
No time was set by Mrs. Campbell for conversion, and
the institution of proceedings in partition was a vol-
untary matter. Mr. Campbell and those claiming under
him stand on the same footing as his colegatees and
cannot plead delay in bar. As between them this is

the first opportunity for presentation of their claims, and there is neither legal or equitable bar to allowance: DuPlaine's Est., 185 Pa. 332.

The sentence following the gift to Mr. Campbell was not intended to change this scheme of disposition. The expression "this property," referred to the last antecedent, the Wallace estate, and its obvious purpose was to declare that the whole of that estate, whether it consisted of "real, mixed or personal property," should constitute the source of payment of these legacies. It was neither in form nor intent a dispository clause. Testatrix had just made a complete disposition and the language here used raises a necessary implication that the legatees were intended to be treated as a class. They were all to be paid out of a common fund, the Wallace estate.

In ordinary course this fund would go to the domiciliary forum for administration; but inasmuch as citizens of this state have made demand for distribution here, this court must assume jurisdiction under the Act of March 31, 1905, P. L. 91. In view of the fact that Mrs. Campbell has been dead many years, the probability is that there are no domiciliary debts remaining unpaid, and therefore no one will be injured by distribution here.

*Errors assigned* were (1–5) various rulings on evidence and final decree dismissing exceptions to amendment of adjudication.

*Harry J. Graham*, for appellant.

*David Stonecipher*, for appellees.

Per Curiam, July 16, 1913:

The decision of the principal question in this case turns upon the proper construction of the will of the testatrix. If the construction adopted by the learned auditing judge, and ably and earnestly maintained in his original as well

as in his dissenting opinion, be the correct one, his conclusion that the claims of the principal legatees were barred by sec. 7 of the Act of April 28, 1855, P. L. 368, would be irresistible. In that view of the will, the decision in Wingett's Est., 122 Pa. 486, would be directly in point and controlling. But notwithstanding what has been so well said by him and by appellant's counsel in favor of that construction, we are constrained to the conclusion that the construction of the will adopted by the majority of the court is the true one. We cannot profitably add anything in support of that construction to what is contained in the concise and convincing opinion of the late President Judge HAWKINS. In that view, the objection to the competency of the witnesses whose testimony is referred to in the first five assignments of error (but not quoted therein as Rule 16 requires) is not valid. As pointed out in the dissenting opinion of Judge OVER, if there was an equitable conversion of the land, the residuary legatee was not personally liable, and the other legatees were competent, under that part of clause e, sec. 5 of the Act of May 23, 1887, P. L. 158, which reads: "or, unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses."

We do not see that there is any room for doubt that the testimony of D. W. Wilson, if believed, was sufficient to rebut the presumption of payment as to him. See Second Nat. Bank v. Thompson, 44 Pa. Superior Ct. 200. And when his testimony to the effect that there was an agreement between the legatees that payment of the legacies should wait until the Wallace place was sold, is considered in connection with all the circumstances and the provisions of the will, we think there was sufficient to warrant a finding that the presumption of payment was rebutted as to them as well.

When the deposition of D. W. Wilson was offered in evidence, objection was made that it was not properly taken, but it is stated in Judge Over's opinion that this objection was withdrawn at or before the final hearing, and, as this is not controverted by appellant's counsel, we do not feel called upon to discuss this objection.

The assignments of error are overruled and the decree is affirmed at the costs of the appellant.